UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA, ) | |
| ) | No. 20 CR 435 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| KEVIN MIX, ) | |
| ) | December 16, 2020 |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

Before the court is Defendant Kevin Mix's motion for immediate release with conditions. For the following reasons, the motion is denied:

### Background

The government arrested Defendant on August 4, 2020, and charged him with one count of wire fraud in violation of 18 U.S.C. § 1343. (R. 1, Compl.; R. 5, Arrest Warrant.) According to the criminal complaint, the government alleges that Defendant embezzled more than $5 million from his employer from October 2018 to June 2020. (R. 1 Compl.; see also R. 46, Govt.'s Resp. at 1 (noting that the continued investigation has shown the alleged amount stolen now totals more than $6 million).) The court held Defendant's initial appearance on the same day as his arrest. (R. 7.) At that appearance Defendant moved orally for an immediate detention hearing, and that hearing was set for August 13, 2020. (Id.)

Before the detention hearing, Pretrial Services submitted a report stating that Defendant posed a risk of flight because of his significant foreign ties,

possession of a passport or international travel document, and recent international travels. (R. 10, Pretrial Services Rep. at 3-4.) Despite this risk, Pretrial Services recommended to the court that Defendant be released on secured bond with certain conditions, including that he surrender his passport, firearm owners identification ("FOID") card, and firearms and that he refrain from obtaining international travel documents, travelling outside the United States, possessing a firearm, or using narcotic drugs or controlled substances unless prescribed by a licensed medical practitioner. (Id. at 4.) In connection with the detention hearing, Defendant's former employer submitted a letter describing acts of dishonesty and untrustworthiness that Defendant allegedly committed.[1] (R. 13, Aug. 10, 2020 Ltr.)

During the detention hearing, the government argued that Defendant must be detained until trial based on "a substantial risk of flight." (R. 42, Aug. 13, 2020 Hearing Tr. at 6.) Defendant opposed the motion and sought immediate release on the ground that he had offered property owned by his father as security to ensure that he returns to court to face this criminal matter. (Id. at 8.) After considering the parties' arguments and evidence proffered, including the Pretrial Services Report and an affidavit from a Special Agent with the Federal Bureau of Investigation ("FBI"),[2] the court granted the government's motion to detain Defendant. (Id. at 36-38.) The court found "a very substantial risk that [Defendant

---

[1] Defendant objected to the submission of this exhibit by a non-party. (R. 42, Aug. 13, 2020 Hearing Tr. at 5.) The court noted Defendant's objection and the fact that the statements in the letter were not made "under oath" and did not constitute "testimony" for purposes of the detention hearing. (Id. (quotations omitted).)

[2] See R. 1, Compl.

was] going to leave the jurisdiction and not come back if given the opportunity." (Id.) In so ruling, the court relied on: (1) the "very substantial" nature of the government's fraud case, including allegations that Defendant stole more than $5 million; (2) the amount of money (about $2 million) that is missing; (3) the insufficiency of security offered for bond—Defendant's father's home, which only has about $192,000 in equity and is located out of state; (4) "modest local ties," as reflected by lack of family, employment, or a long-term residence in this district; and (5) "very substantial foreign ties," involving frequent travel to the Dominican Republic, where his fiancé and children live and where he has money stored. (Id.) Following the hearing, the court issued a written order finding that the government had shown, by a preponderance of evidence, that Defendant presented a serious risk of flight. (R. 15.)

Defendant thereafter moved for reconsideration of the court's detention ruling. (R. 17, Def.'s Mot. for Reconsideration.) In that motion Defendant offered to post both his father's and his mother's homes as security for a bond. (Id. at 1.) He claimed that his father's home had about $192,000 in equity, and his mother's home had about $84,713 in equity. (Id.) Defendant also submitted a 12-month lease that he executed on June 22, 2020, about a month before his arrest. (Id. at 2 & Ex. 1.) The government opposed Defendant's motion for reconsideration. (R. 19, Govt.'s Resp.) In support of its opposition the government presented additional information showing that that Defendant: (1) paid $100,000 to a private charter jet company and retains a balance of about $65,000; (2) transferred about $452,000 to a

3

Dominican Republic financial institution and then an additional amount of $208,000 from his PNC bank account; (3) purchased a Lexus RX from a Des Plaines, Illinois dealer on December 4, 2019, and shipped it to the Dominican Republic; and (4) transferred $861,935 from accounts at Chase and Citibank to new accounts at Bank of America, without advising Pretrial Services of these new accounts. (Id. at 2-3.)

After another full hearing, at which the parties presented arguments and evidence, the court denied Defendant's motion for reconsideration. (R. 47, Aug. 26, 2020 Hearing Tr. at 38-43.) Consistent with its prior ruling, the court found that Defendant continued to pose a serious risk of flight given substantial family ties in the Dominican Republic, access to a considerable amount of money overseas, lack of significant ties to this jurisdiction, the nature of this case, and the fact that a substantial amount of money remains missing. (Id. at 38-39.) The court also expressed concern regarding Defendant's lack of candor with Pretrial Services regarding his finances, leases, and properties. (Id. at 40-41.) And while the court considered the additional real property Defendant offered as security, the court concluded that it was still not enough security. (Id. at 42-43.) Accordingly, the court found that Defendant continues to have "both an opportunity and an incentive to flee if he can" and ordered that he remain in custody. (Id. at 39, 43; R. 21.)

## Analysis

Defendant argues that his immediate release is required pursuant to the Bail Reform Act and the Fifth Amendment's due process clause. (R. 45, Def.'s Mot.) The

4

Bail Reform Act generally requires the release of a person before trial "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(b). Where "serious" concerns regarding risk of flight are present, a judicial officer may order detention pending trial, *id.* § 3142(f)(2), provided that "no condition or combination of conditions will reasonably assure the appearance of the person as required," *id.* § 3142(e). In determining whether detention is warranted, courts generally consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g).

The Fifth Amendment's due process clause precludes the deprivation of "life, liberty, or property without due process of law." *U.S. v. Salerno,* 481 U.S. 739, 746 (1987). Detention before trial may be "repugnant to the concept of substantive due process" under certain circumstances, *id.* at 744, but the Supreme Court has noted an exception allowing detention where a person "presents a risk of flight," *id.* at 749 (citing *Bell v. Wolfish,* 441 U.S. 520, 534 (1979) ("[T]he Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, [and] confinement of such persons pending trial is a legitimate means of furthering that interest.")).

Before the court may reach the substantive merits of Defendant's motion, it must address a procedural challenge by the government—whether Defendant has

5

exceeded his ability to challenge his detention. (R. 46, Govt.'s Resp. at 4-6.) As the government points out, Defendant has already had "two bites of the apple" in contesting his detention. (Id. at 4-5.) The government argues that the Bail Reform Act "contemplates that a defendant will get a maximum of two (2) detention hearings," citing an opinion from a district court in Virginia for support. (Id. at 4 (quoting *United States v. Cannon*, 711 F. Supp. 602, 607 (E.D. Va. 2010)).) But Section 3142(f), quoted by the government earlier in its response, seems to belie its argument. (See R. 46, Govt.'s Resp. at 2-3.) That provision allows the "reopen[ing]" of a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on this issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f). Given that the government has not cited any precedential authority supporting the validity of a purported two-strikes rule pertaining to detention hearings, and has not explained how such a rule is consistent with the statute's reopening provision, the court finds the government's argument unpersuasive.

The government next suggests that, rather than seeking another detention hearing pursuant to Section 3142(f), Defendant should have moved for revocation or amendment of his detention order pursuant to 18 U.S.C. § 3145(b). (R. 46, Govt.'s Resp. at 5.) He did not do so. But even if he had, the government argues that such a motion would not have been successful because Judge Steven C. Seeger presided

6

over the detention hearing and the reconsideration hearing,[3] and Section 3145(b) merely authorizes review of a magistrate judge's decision by a district judge. (Id.) Because Defendant did not move for immediate release pursuant to Section 3145(b), the court does not reach this issue.

The key inquiry for the court at this juncture is whether Defendant's current motion offers material information, not previously known to Defendant at the time of his detention hearing or the reconsideration hearing, which would reasonably assure his appearance as required in this jurisdiction. 18 U.S.C. §§ 3142(f),(g). The court finds that it does not. Defendant admits that he still has substantial family ties overseas as two of his minor children and their mother live in the Dominican Republic. (R. 45, Def.'s Mot. at 14; see also R. 42, Aug. 13, 2020 Hearing Tr. at 11, 14, 38; R. 47, Aug. 26, 2020 Hearing Tr. at 28-29.) During the detention hearing and the motion for reconsideration hearing, the government offered evidence that Defendant "parked a considerable amount of money . . . almost half a million dollars," in the Dominican Republic. (R. 47, Aug. 26, 2020 Hearing Tr. at 29-30, 39.) He also shipped a Lexus to the Dominican Republic in late 2019, further demonstrating "his substantial interest in an overseas location." (Id. at 18-25, 40.) And he maintains access to—and a substantial credit with—a private, charter jet service, giving him "an ability to leave the jurisdiction." (Id. at 25-27, 42.) Taken

---

[3] This court was assigned to this case during criminal duty, but because of caseload, Judge Steven C. Seeger presided over Defendant's initial appearance, the government's motion for pretrial detention, and Defendant's motion for reconsideration. Judge Seeger then returned the case to this court. (R. 47, Aug. 26, 2020 Hearing Tr. at 43.)

together, the evidence offered by the government in those hearings establishes Defendant's significant foreign ties, as the court previously ruled. (R. 15 at 2; R. 21.)

Despite the government's prior showing, and the court's prior findings, Defendant argues that the significance of any foreign ties is negated by the Dominican Republic's extradition treaty with the United States, the surrender of his passport at the time of arrest, and the nature of recent international travels—to visit his children. (R. 45, Def.'s Mot. at 13-16, 23.) The court discussed Defendant's surrender of his passport and the nature of his international travels during his detention hearing. (See R. 42, Aug. 13, 2020 Hearing Tr. at 11-12, 14.) Defendant could have, but did not, raise the extradition issue during the detention hearing or the reconsideration motion hearing. However, even if he had timely raised the issue, the court does not agree that the possibility of extradition "nullifies" any serious risk of fleeing. (R. 45, Def.'s Mot. at 14.) Indeed, such a statement does little to satisfy the court that, if released, Defendant would appear as required.

As to his community or family ties to this district, Defendant has only modest ties, a fact that he does not deny, and points to no additional facts that were not known to him during the previous two hearings. (R. 45, Def.'s Mot. at 23; see also R. 15 at 2; R. 47, Aug. 26, Hearing Tr. at 39.) He remains unemployed and, as of the reconsideration motion hearing, his "roots in this district [were] relatively slight." (R. 47, Aug. 26, 2020 Hearing Tr. at 39.) To "address this concern," Defendant offers evidence of a current, 12-month lease he signed in June 2020.

8

(R. 45, Def.'s Mot. at 23.) Defendant argues that such lease provides him with a "stable residence" in this jurisdiction. (Id.) But the court already considered the lease during the reconsideration motion hearing and was "somewhat troubled" by Defendant's failure to disclose such lease to Pretrial Services. (R. 47, Aug. 26, 2020 Hearing Tr. at 8-13, 41.) In any event, the government correctly points out that Defendant could "walk away from that apartment at any time." (R. 46, Govt.'s Resp. at 9.) Defendant also identifies a third-party custodian with whom he could live if necessary. (R. 45, Def.'s Mot. at 23.) In its response, however, the government represents that such third party is no longer willing to serve as a custodian. (R. 46, Govt.'s Resp. at 9.)

In terms of the nature of the case, Defendant does not dispute that he has been charged with an alleged fraud of more than $5 million. (R. 45, Def.'s Mot. at 20-21; R. 47, Aug. 26, 2020 Hearing Tr. at 39-40.) Defendant instead focuses on the financial nature of his alleged crime and citing survey data showing that "only 1% of defendants charged with fraud fail to appear." (R. 45, Def.'s Mot. at 20 (citation and emphasis omitted).) But this type of data is neither here nor there as to whether Defendant poses a substantial risk of flight. And such data ignores the fact that he is alleged to have stolen "a very substantial amount of funds," (R. 47, Aug. 26, 2020 Hearing Tr. at 40), and at least part of these funds is unaccounted for, (R. 46, Govt.'s Resp. at 7). Missing funds initially were thought to total about $2 million, but at the hearing on the motion to reconsider, the government indicated that it had located certain of those funds. (R. 47, Aug. 26, 2020 Hearing Tr. at 15-

18.) Nevertheless, the government contends that Defendant has "plenty" of allegedly stolen funds "at his disposal should he be released." (R. 46, Govt.'s Resp. at 7.)

Defendant disagrees that any missing or other funds will allow him an opportunity to flee, but presents no new facts in support of his position. (R. 45, Def.'s Mot. at 22.) He argues that the government has located "most of the outstanding missing funds" and seized "most if not all" of his financial assets. (Id.) He also asserts that the security he has offered—the equity in primary residences owned by his father and mother—provide him with "an extraordinarily strong incentive to comply with release conditions." (Id.) Again here, the court considered these factors during the hearing on Defendant's motion to reconsider detention. Even if the government's estimate of missing funds has gone down, the court has determined that substantial funds remain missing. (R. 47, Aug. 26, 2020 Hearing Tr. at 39-40.) And while the court "very carefully considered" the proposed security for Defendant's release, it found that "the overall equity in the homes is relatively small relative to" missing funds and to "the overall nature of the fraud." (Id. at 42-43.)

In short, Defendant simply does not offer any material information, not known to him at the time of his detention or the motion for reconsideration hearings, that undermines the preponderance of the evidence showing that he remains a serious risk of flight. By contrast, the government offers even more

evidence showing that if released Defendant remains capable of disappearing and not returning to the district as required. (R. 46, Govt.'s Resp. at 6-7.)

The court agrees with the government and orders the continued detention of Defendant. The court twice has ruled before, after considering the parties' arguments and proffered evidence, that the government satisfied the preponderance of evidence standard in showing that Defendant presents a serious risk of flight pursuant to Section 3142(f)(2). (R. 15 at 2; R. 21; R. 42, Aug. 13, 2020 Hearing Tr. at 36-38; R. 47, Aug. 26, 2020 Hearing Tr. at 38-43.) In light of the previous rulings, the conditions proposed by Defendant simply are not sufficient to reasonably ensure that he will return to court as required. *See* 18 U.S.C. § 3142(g); *United States v. Gibson*, 34 F. Supp. 3d 955, 965 (N.D. Ind. June 2019).

## Conclusion

For the foregoing reasons and because Defendant fails to offer information previously unknown to him that materially bears on his likelihood of appearing in this jurisdiction as required and fails to propose conditions sufficient to ensure his appearance, his motion must fail.

          **ENTER:**

          _____
          **Young B. Kim**
          **United States Magistrate Judge**